**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FORT LAUDERDALE DIVISION**

In Re:

DAREN C. DALY,                                    Case No: 22-15694-SMG

    Debtor.                                      Chapter 11 (Sub V)

_____

PATRICK DALY, ELIZABETH DALY,
ALL PAVING & SEALCOATING, LLC, and
PATRICK DALY AND ELIZABETH DALY
AS THE MAJORITY SHAREHOLDERS
OF ALL PAVING, INC.                               ADV. No: 22-01391-SMG

    Plaintiffs

vs.

DAREN C. DALY.

    Defendant.

_____/

**RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**
**ADVERSARY COMPLAINT FOR EXCEPTION TO DISCAHRGE FOR FAILURE TO**
**STATE A CLAIM OR ALTERNATIVELY FOR JUDGMENT ON THE PLEADINGS,**
**SOLELY AS TO CORPORATE PLAINTIFFS**

Plaintiffs//Creditors, PATRICK DALY ("PATRICK"), ELIZABETH DALY

("ELIZABETH") and ALL PAVING AND SEALCOATING, LLC ("AP, LLC"), and PATRICK

DALY and ELIZBETH DALY as the Majority Shareholders of ALL PAVING, INC., hereby file

their Response in Opposition to Debtor/Defendant, DAREN C. DALY ("DAREN") Motion to

Dismiss Adversary Complaint for Exception to Discharge for Failure to State a Claim or

Alternatively for Judgment on the Pleadings, Solely as to Corporate Plaintiffs, as follows:

**LEGAL STANDARDS FOR MOTIONS TO DISMISS ADVERSARY PROCEEDING**

It is axiomatic that: "in order to survive a motion to dismiss, a complaint must

contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct 1937 (2009), *citing to*, *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955 (2007).  Stated alternatively, the allegations of the Complaint must be treated as being true, in a light most favorable to the plaintiff.  *In re Forever 21, Inc.,* 623 BR 53 (Bkrtcy D. Del, 2020).

The *Ashcroft v. Iqbal* case stated that a claim has facial plausibility "when the Plaintiff pleads factual content that allows the court to draw a reasonable inference that the Defendant is liable for the misconduct alleged."  The *Ashford v. Iqbal* case further stated; "[t]o determine whether a claim for relief is plausible is a 'context specific task', requiring the Court to draw on its judicial experience and common sense." (*Citing to, Twombly,* 550 U.S. 556, 127 S.Ct. 1955 (2007)).  Under Fed.R.Civ.P. Rule 8 (a)(2), as incorporated in bankruptcy proceedings pursuant to F.R.B.P. Rule7008 (f), provides that all pleadings shall be so construed as to do substantial justice."

<u>**ACTUAL FRAUD**</u>

Plaintiff's first Cause of Action in its Amended Adversary Complaint is pursuant to 11 U.S.C. §523 (a)(2)(A) of the Bankruptcy Code, which excepts from discharge "any debt…for money… to the extent obtained by…false pretenses, false representation or actual fraud."  As set forth in the case of *In re Moschell,* 607 B.R. 487 (Bkrtcy. W.D. Penn), the phrase "actual fraud" in §523(a)(2)(A) "encompasses debts that arise from any deceit, artifice, trick, or design involving direct and active operation of the mind to circumvent and cheat another." *Citing to, McClellen v. Cantrell,* 217 F.3d 893  (7th Cir 2000):  The *Moschell* case observed that: "fraud is a generic term that embraces all the multifarious means which human ingenuity can devise and which are resorted to by one individual to gain an advantage over another by suppression of the

truth.   No definite and invariable rule can be laid down as a general proposition defining fraud, which includes all surprise, trick, cunning, disassembling and any other unfair way by which another is cheated."  The Court in the *Moschell* case further pointed to the United States Supreme Court case of *Husky International Electronics, Inc. v. Ritz,* 578 U.S. 356, 136 S.Ct. 1581 (2016)

The Supreme Court  in *Husky* held that the term "actual fraud" in §523 (a)(2)(A), encompasses forms of fraud like fraudulent conveyance schemes, that can be effected without a false representation."  Thus, Defendant's argument that the Plaintiff must establish that the Defendant made a false representation with the purpose of deceiving Plaintiff, that the Plaintiff relied upon the Defendant's representation, and Plaintiff's reliance on the false representation was justifiably founded, is inapplicable and not determinative in this instance.  Based on the ruling in *Husky, "*actual fraud" and forms of fraud can be effected without a false representation. Without the necessity of a false representation, Defendant's arguments regarding reliance and justifiable reliance are inapplicable and fall by the wayside.

The rationale in *Husky* was expressed as: "fraud…that being so various in its nature, and so extensive in its application in human concerns, it would be difficult to enumerate all the instances in which Courts of Equity would grant relief under this head.  There is no need to adopt a definition for all times and all circumstance here because, from the beginning of English bankruptcy practice, courts and legislatures have used the term 'fraud' to describe a debtor's transfer of assets that, like Ritz' scheme, impairs creditor's ability to collect a debt."

The *Husky* Court pointed out that: "[e]qually important, the common law also indicates that conveyances, although a fraud, do not require a misrepresentation from a debtor to a creditor.  As a basic point, conveyances are not an inducement-based fraud."  The *Husky* court

3

reasoned that "it is in the acts of concealment and hindrance in the fraudulent-conveyance context that opportunities for a false representation from the debtor to the creditor are limited." 578 U.S. at 360.

Here, where the Debtor employed a long term scheme to usurp the control, and take over the assets and accounts of API, a false representation is not required under the rationale and holding of *Husky*. Debtor's actions as alleged in the Amended Adversary Complaint were concealed from the Plaintiffs, and hindered the Plaintiffs from utilizing the asset which they owned 87.5% of. Debtor in this scenario, did not go to his parents directly and state "I am going to take over the corporation, and take over 100% of the shares, while taking over all accounts and assets of API." The plan for the fraudulent conveyance scheme was performed silently, over a period of time, and took place in the background, while concealing his actions from the true owners of API.

In Plaintiffs' Amended Adversary Complaint for Exception to Discharge ("Amended Adversary Complaint"), it is alleged that the Debtor has ignored the Orders of the Circuit Court of the 17th Judicial Circuit of Broward County, FL, (Exhibits 1 and 2), that certain matters were dismissed or stayed, "because majority ownership of that entity has not yet been adjudicated". The Debtor has ignored the Circuit Court Orders staying or dismissing claims, in falsely claiming a 100% ownership in ALL PAVING, INC. ("API").

Plaintiffs Amended Adversary Complaint alleges that the initial formation of API was done with the knowledge of Plaintiffs, and the paperwork to commence corporate existence for API was submitted to the Florida Department of State by an employee of AP, LLC, Joseph Fahrendorf, in accordance with the instructions from DAREN. The Amended Adversary Complaint alleges PATRICK, ELIZABETH  and AP, LLC, provided all of the consideration for

the formation of API and the subsequent filings of the Annual Reports and the fees incident thereto.

The Amended Adversary Complaint posits that for the first two years after formation of API on September 19, 2013, API was a shell corporation and did not actively engage in business. The Complaint next alleges that on April 19, 2015, API opened a bank account at Bank United, and that PATRICK, ELIZABETH and DAREN executed a Corporation Resolution that ELIZABETH was the 75% owner of API, PATRICK was the 12.5% owner of API, and DAREN was the 12.5% owner of API.  At the same time that the bank account was opened with Bank United, API submitted a Beneficial Ownership Certificate signed by ELIZABETH as the President, in the presence of and with the approval of DAREN and PATRICK.  The Beneficial Ownership Certificate is attached to the Amended Adversary Complaint as Exhibit "3".  The Corporate Resolution is attached to the Circuit Court Second Amended Complaint (Exhibit 10) as Exhibit "7" to Exhibit "10".  None of the documentation submitted to Bank United listed Jamie A. Schindler as an officer or shareholder of API.

Further buttressing the 75% /12.5%/12.5% ownership of API, DAREN in his own handwriting filled out a credit application to CAT Financial stating that ELIZABETH is a 75% owner and DAREN is a 12.5% owner.  This document is attached to the Amended Adversary Complaint as Exhibit "4".  DAREN's sworn testimony in the Circuit Court proceedings regarding this credit application is attached to the Circuit Court Second Amended Complaint (Exhibit 10 to the Amended Adversary Complaint) as Exhibit "7" to that document, and is incorporated by reference.

Thus, at the time API established its bank account at Bank United in September, 2015, and submitted Credit Applications to CAT Financial and Komatsu, it was clear and indisputable

that API was owned 75% by ELIZABETH, 12.5% by PATRICK, AND 12.5 % by DAREN; and was not owned by Jamie Schindler in any percentage.

Shortly afterward, on January 15, 2016, DAREN electronically signed and filed API's Annual Report with the Florida Department of State, stating that ELIZABETH is the President, and PATRICK and DAREN are Vice Presidents of API

However, in 2016, DAREN began to put his fraudulent conveyance scheme into play. He espoused the position, without any foundation or factual basis for his position, that Jamie Schindler was the 80% shareholder of API, contrary to any prior representation as to API's ownership. He then stated, without any documentary proof, that Jamie Schindler had transferred her purported 80% ownership interest in API to DAREN. (See the Second Amended Complaint filed in the Circuit Court proceeding, listed as Exhibit 10 to the Amended Adversary Complaint, and all Exhibits to Exhibit 10, which are incorporated by reference as if fully set forth herein.)

Then in furtherance of his fraudulent scheme, on December 12, 2016, DAREN, as the Incorporator, filed Articles of Amendment with the Florida Department of State, to remove ELIZABETH as the President of the corporation, and appoint himself as President in her stead. Since in September, 2015, API had provided documents to Bank United that PATRICK, ELIZABETH and DAREN were officers of API (with no mention of Jamie Schindler), the result was that the Incorporator could no longer make such filings or take such action. In June 2017, DAREN, still as the Incorporator, and without proper authority, filed another set of Articles of Amendment with the Florida Division of Corporations, removing PATRICK as Vice President of the corporation. Both of these measures were undertaken by DAREN secretly and without notice to PATRICK and ELIZABETH. The Articles of Amendment filed with the Florida Department of State in 2016, and 2017, are attached as Exhibits 17 and 18 to Exhibit "10" to the

Second Amended Complaint in the 2017 Circuit Court case.  The Amended Adversary Complaint further recites the testimony given by DAREN in the trial in Circuit Court admitting to his forgeries of the signatures of ELIZABETH and PATRICK, including the CAT Financial credit applications showing that ELIZABETH was the 75% shareholder  of API .

Furthermore, DAREN made the affirmative statement that his finance, Jamie Schindler was originally the 80% owner of API stock in 2013 (Despite Jamie Schindler never being mentioned on the submissions of documents to Bank United and on Credit Applications.). DAREN then asserted in 2016 that Jamie Schindler transferred her 80% interest in API to DAREN.  The alleged 80% ownership of API of Jamie Schindler was not disclosed on any of the documents provided to Bank United, and applications which were provided to CAT Financial and other creditors.  Furthermore, there was no documentation showing that Jamie Schindler was ever a Shareholder of API in 2013, until DAREN fabricated and backdated Share Certificates and a Stock Transfer Ledger which purportedly was issued in 2013.  That false proof that Jamie Schindler was a shareholder of API, which was fabricated, contrived and backdated, is a part of DAREN's fraudulent conveyance scheme to wrest the control of API from his parents.

DAREN further misrepresented the corporate ownership of API on the CNS Surety Application that is part of Exhibit "20" attached to the Second Amended Complaint (Exhibit 10), which reflected that ELIZABETH was the 32.5% owner, PATRICK was the 32.5% of API and DAREN owned the remaining 35% of API.  The Amended Adversary Complaint shows the continually moving percentages of ownership asserted by DAREN without any consistency in the ownership of API.  Exhibit "21" attached to the Second Amended Complaint filed in Circuit Court, is a Wells Fargo Credit Application stating that PATRICK and DAREN each owned 50% of API in 2017.  DAREN signed this Application, but admittedly forged the signature of his

father, PATRICK, on the Wells Fargo Application.

The Second Amended Complaint (Exhibit "10") goes on to state that after the State Court case was filed, DAREN fabricated phony Stock Certificates and a phony Stock Transfer Ledger which he backdated to 2013, purportedly reflecting that Jamie Schindler was the 80% shareholder in API.  (And then transferred her purported 80% interest to DAREN). This intentional, malicious, and willful conduct was a part of the overall fraudulent conveyance scheme which DAREN conducted over a period of several years to usurp and wrest the ownership and control of API.  The Amended Adversary Complaint alleges that DAREN engaged in the fraudulent scheme as a result of actual fraud, including the eventual conveyance of 100 % ownership of API to himself, with full knowledge of the falsity thereof.

Daren's conduct, over a course of years, learning to greater and greater extent seeing what he could get away with, clearly amounts to a fraudulent conveyance scheme, by using actual fraud to take control over the governance and assets of API, such that Defendant's Motion to Dismiss should be denied.

## THE PLAINTIFFS ARE CREDITORS OF DEFENDANT

Defendant's Motion to Dismiss alleges that AP, LLC failed to fille a Proof of Claim, and as a result, is not a creditor, and therefore lacks standing to file its Amended Adversary Complaint.  Defendant apparently ignores one of the principles asserted in the *Moschell* case, that in ruling on a motion to dismiss for failure to state a claim, without converting the motion into one for summary judgment, materials which are properly submitted as part of the complaint, documents which the complaint incorporates by reference or which are otherwise integral to the claim, must be considered as part of Plaintiff's claim. 607 B.R. at 493,494.

Plaintiffs have attached to the Amended Adversary Complaint the Second Amended Complaint filed in Circuit Court (Exhibit 10) and all Exhibits attached to the Second Amended Complaint.  Furthermore, the Second Amended Complaint and its Exhibits are incorporated by reference, not only to the Amended Adversary Complaint, but also is attached and incorporated by reference in Plaintiff's Proof of Claim (13-1).  The Plaintiff's Proof of Claim also lists under "[o]ther names the creditor used with the debtor", the designation "All Paving & Sealcoating, LLC".  With the "other names used" listed as AP, LLC and the incorporation by reference of the Second Amended Complaint, and all Exhibits, along with the claims asserted in this Adversary Proceeding, it cannot be gainsaid that the corporate Plaintiffs are not creditors, and therefore, have standing to participate in this adversary proceeding.

## COUNT II IS FOR EMBEZZLEMENT, NOT BREACH OF FIDUCIARY DUTY

Plaintiffs recede from any allegation in the Amended Adversary Complaint that there was a Breach of Fiduciary Duty on the part of the Defendant, and strictly limit the allegations in Count II to embezzlement.

Since Section 523 (a)(4) is stated in the disjunctive, embezzlement does not require an allegation that the embezzlement took place with fraud in a fiduciary capacity.  In *Moschell,* the court ruled that the "embezzlement" and "larceny" components of Section 523 (a)(4) do not require that the debtor be a fiduciary.  607 B.R. at 497.

The case of *In re Sorge,* 574 B.R. 72, 75 (Bkrtcy E.D. N.C.2017), defines "embezzlement as the fraudulent or knowing and willful misapplication or conversion of property which belongs to another, by a person to whom such property has been entrusted or onto whose hands it has lawfully come."

Count II of Plaintiffs' Amended Adversary Complaint for embezzlement pursuant to 11 USC Section 523(a)(4) makes various allegations that DAREN embezzled the sum of $500,000.00 from API on December 16, 2016 (although $450,000.00 was returned, the $50,000.00 remainder was never restored to API); that DAREN withdrew the sum of $175,000.00 on June 9, 2017 through a wire transfer to his personal account (Transferee's identity was left blank in Quickbooks, evidencing an intent to deceive); the sum of $443,516.16 was paid to DAREN in 2017, $370,750.00 of which was characterized as "Contractors Consulting"; in 2018, Quickbooks reflects an additional $146,600 was paid to DAREN, $145,000.00 was characterized as "Indemnification for legal fees".  The Amended Adversary Complaint also alleges DAREN's payment to himself of exorbitant salaries, and taking dominion of the equipment belonging to API set forth in Paragraph 48, items  "a" through "s" .  All of the embezzled items were misapplied, or were conversions of the property of API, by a person to whom said property has been entrusted or onto whose hands it has lawfully come.

There is no question that Count II of the Amended Adversary Complaint states a Cause of action in favor or PATRICK and ELIZABETH, and API.

## COUNT III IS FOR WILLFUL AND MALICIOUS INJURY TO AP, LLC'S PROPERTY

DAREN concocted a plan to take away control of the AllPaving.com website, which resulted in Plaintiffs having been denied access to the website AllPaving.com   This website, which had established email addresses for PATRICK and ELIZABETH, and AP, LLC's employees, and had been used by both API and AP, LLC prior to DAREN's willful and malicious taking dominion over the domain name.  The Plaintiffs allege that the domain name was purchased in the name of AP, LLC in 2014 (Before API commenced business), and neither API nor the Defendant had any ownership interest in the Domain name (See paragraphs 25

through 29 of the Second Amended Complaint attached to the Amended Adversary Complaint as Exhibit "10".) The Amended Adversary Complaint alleges, that without authorization, DAREN broke into PATRICK's email account address, masqueraded as PATRICK, sent an email to GoDaddy to release the domain name, which GoDaddy relied upon to change the domain name to under DAREN's control and which denied PATRICK, ELIZABETH, and all employees of AP, LLC access to their emails connected to the domain name.  Certainly, such conduct was malicious and willful with the knowledge that his actions would cause injury to the property of another.

## CONCLUSION

The Amended Adversary Complaint alleges that DAREN's fraudulent scheme to gain the bank accounts, equipment, funds and business of API, and his conduct in switching and transferring funds in API's account to financial accounts controlled exclusively by him, DAREN's denial of  PATRICK's and ELIZABETH's access to the assets of API, their email accounts and domain name, and obtaining money and property by false pretenses and actual fraud should result in an exception to DAREN's Discharge being granted by the Court.

The Amended Adversary Complaint further alleges that DAREN's admission of the forgeries of PATRICK and ELIZABETH's signatures and his filings with the Florida Department of State by stating that corporate authority was not necessary for said filings further support DAREN's lack of character and willingness to exercise whatever means necessary to achieve his objective of taking control of the assets and equity interest of API by the fraudulent conveyance scheme away from the true owners of API.

The conduct by DAREN as alleged in Plaintiffs' Amended Adversary Complaint, along

11

with the Exhibits and the Second Amended Complaint (Exhibit 10) and its Exhibits, incorporated

by reference in the Amended Adversary Complaint, fit the requirements of 11 U.S.C. Sections

523 (a)(2)(A), 523 (a)(4), and 523 (a)(6) such that an Exception to DAREN's Discharge should be

granted, and API should be restored to the control of the Plaintiffs.

WHEREFORE, based on the authorities and allegations asserted in this Response to

Defendant's Motion to Dismiss, Plaintiffs respectfully request that the Court deny Defendant's Motion

to Dismiss Amended Adversary Complaint for Exception to Discharge for Failure to State a Claim or

Alternatively for Judgment on the Pleadings, Solely as to Corporate Plaintiffs.

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on January 27, 2023, I electronically filed the following

document with the Clerk using CM/ECF and that a true and correct copy of the Adversary

Complaint was furnished via CM/ECF to Monique D. Hayes, Esq., monique@dgimlaw.com ,

and Isaac M. Marcusshamer, Esq. isaac@dgimlaw.com  both with DGIM LAW, PLLC.

I HEREBY CERTIFY that I am admitted to the Bar of the
United States District Court for the Southern District of
Florida and I am in compliance with the additional
qualifications to practice in this court as set forth in Local
Rule 2090-1(c)(3).
C. DAVID TANGORA, P.A.
Attorney for Creditors,
Patrick & Elizabeth Daly,
and All Paving & Sealcoating, LLC
200 S.E. 18th Court
Ft. Lauderdale, FL 33316
(954) 779-1005-Phone
(954) 764-4502-Facsimile
tangoralaw@bellsouth.net
By/s/ C. David Tangora
    C. David Tangora, Esq.
    Florida Bar No: 522104